UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE CONSTRUCTION INDUSTRY AND LABORERS JOINT PENSION TRUST FOR SOUTHERN NEVADA and THE CONSTRUCTION INDUSTRY AND LABORERS JOINT PENSION TRUST FOR SOUTHERN NEVADA,<br><br>                Plaintiffs,<br>   v.<br><br>RECREATION DEVELOPMENT COMPANY, LLC, a Nevada limited liability company,<br><br>                Defendant. | Case No. 2:22-cv-00052-ART-DJA<br><br>ORDER |

This case concerns the liability under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") of defendant Recreation Development Company, LLC ("RDC") for payments allegedly owed to the Construction Industry and Laborers Joint Pension Trust for Southern Nevada ("Pension Trust") from when RDC allegedly withdrew from the Pension Trust in 2015. Before the Court are: (1) a motion to dismiss, or alternatively motion for judgment on the pleadings, or alternatively motion for summary judgment brought by RDC (ECF No. 7); and (2) a motion for summary judgment brought by the Board of Trustees of the Construction Industry and Laborers Joint Pension Trust for Southern Nevada ("Trustees") and the Pension Trust (collectively "Plaintiffs") (ECF No. 17). RDC claims that dismissal is warranted because RDC never incurred withdrawal liability since it ceased operations as a construction company in June of 2015 and did not resume operations within five years as contemplated by the MPPAA. Plaintiffs claim that irrespective of RDC's substantive argument on its withdrawal

liability, RDC failed to initiate the arbitration proceedings mandated by the MPPAA and has thereby waived its defenses to liability, entitling Plaintiffs to judgment as a matter of law. For the reasons set forth in this order, the Court grants Plaintiffs' motion for summary judgment and denies RDC's motion.

## I.  BACKGROUND

Prior to June of 2015, RDC was engaged as an employer in the building and construction industry and was a signatory to a collective bargaining agreement which required RDC to make employee benefit contributions to the Pension Trust. (ECF No. 1 ("Complaint") at ¶ 8; ECF No. 7-1 Exh. A; ECF No. 17-2.) The Pension Trust is a multiemployer employee pension benefit plan governed by ERISA and MPPAA, formed by a trust agreement and operated by the Trustees. (Complaint at ¶¶ 5–6; ECF No. 17-3.) According to RDC, in June of 2015 RDC ceased its operations as an employer in the building and construction industry in the State of Nevada, and RDC made its last contribution to the Pension Trust in 2015. (Complaint at ¶ 8; ECF No. 7-1 Exh. A.)

More than six years after RDC allegedly ceased its operations in Nevada in June of 2015, the Trustees demanded payment from RDC. The Trustees first demanded payment from RDC for withdrawal liability by letter dated July 22, 2021. The letter to the Trustees informed RDC that "the Trust has determined that [RDC] has withdrawn from the Trust during the plan year that ended on December 31, 2015" and that "[t]he Trust hereby demands that RDC remit payment of its withdrawal liability, which totals $595,120." (ECF No. 17-1 Exh. 4.) RDC claims that it first received this notice in a letter dated September 3, 2021. (ECF No. 7 at 4; ECF No. 7-1 Exh. B.) In any event, RDC responded in a letter dated September 22, 2021, in which it explained that its ceasing of operations in Nevada did not trigger withdrawal liability, stating, "RDC did not withdraw from the [Pension] Trust, it merely ceased operations in 2015. Pursuant to 29 U.S. §1383(b)(2), RDC did not 'continue to perform work in the jurisdiction

of the collective bargaining agreement' in the next five (5) years nor did it 'resume[s] [sic] such work within 5 years after the date on which the obligation to contribute under the plan ceases.' Thus, there was no complete nor partial withdrawal triggering 'withdrawal liability' pursuant to the [MPPAA]." (ECF No. 7-1 Exh. C.)

The Trustees treated RDC's response as a request for review, asked for documentation on work performed in 2014 and 2015, and demanded an initial payment on withdrawal liability. By letter dated September 28, 2021, the Trustees responded that "the [Pension] Trust is in receipt of [RDC's] letter dated September 22, 2021, and will treat it as a request for review, made in accordance with 29 U.S.C. § 1399, of the [Pension] Trust's withdrawal liability assessment issued to RDC[.]" (ECF No. 7-1 Exh. D.) The Trustees' letter also requested "documentation for the 2014 and 2015 plan years that demonstrates what type of work the employees, for which RDC had an obligation to contribute to the [Pension] Trust, were performing." (*Id.*) The Trustees also sent a letter dated September 29, 2021 which stated that RDC's "withdrawal liability payment in the amount $34,508 was due September 1, 2021, per the attached payment schedule. To date, payment has not been received. Please direct RDC to remit the late payment […] within sixty (60) days to avoid default." (ECF No. 7-1 Exh. F.)

RDC responded that its response should be construed as a notification of no withdrawal liability and that the Trustees' demand for withdrawal liability payment was untimely. RDC responded to the Trustees' two letters in two letters dated October 4, 2021. (ECF No. 7-1 Exh.'s E, G.) The letter responding to the September 28 letter stated that RDC "should have been notified of any failures to contribute to the [Pension Trust] for the plan year which ended on December 31, 2015, earlier than September 3, 2021" and that "[b]ecause RDC did no work in the State of Nevada during the 2015 plan year, the 6-year statute of limitations applies to the 2014 plan year. Accordingly, the letter dated September 22, 2021

should be characterized *not* as a 'Request for Review,' but rather as a 'Notification of No Withdrawal Liability.'" (ECF No. 7-1 Exh. E (emphasis in original).) The letter responding to the September 29 letter stated that RDC "did no work in the State of Nevada during the plan year which ended on December 31, 2015" and thus "made no contributions [...] during the 2015 plan year. As for [the Trustees'] request for documentation for the 2014 plan year, RDC declines to provide that information due to the applicable 6-year statute of limitations." (ECF No. 7-1 Exh. G.)

The Trustees filed their complaint in this Court on January 11, 2022, seeking judgment for withdrawal liability. (ECF No. 1.) On April 27, 2022, RDC filed its motion to dismiss. (ECF No. 7.) RDC argues that it has no withdrawal liability under ERISA and the MPPAA because RDC falls within the building and construction industry exception to withdrawal liability, which provides that a complete withdrawal occurs only if the employer ceases to have an obligation to contribute to the plan and, in addition, either: (1) continues to perform the same or similar work in the jurisdiction of the collective bargaining agreement; or (2) resumes such work within five years after the cessation of the obligation to contribute and does not renew the obligation at the time of resumption. *See* 29 U.S.C. § 1383(b). Since RDC ceased its operations in June of 2015 and did not continue to perform the same or similar work in Nevada or resume such work within five years, complete withdrawal was not triggered, RDC argues.

RDC also argues that the Plaintiffs' complaint should be dismissed because of the Plaintiffs' delay of more than six years in notifying RDC of any obligation for continuing contribution to the pension plan. Specifically, RDC argues that: (1) the Plaintiffs' notification was untimely under the six-year limitation set forth in 29 U.S.C. § 1383(d)(4); and (2) the Plaintiff's notification was not made "as soon as practicable" as required by 29 U.S.C. § 1399(b)(1).

Plaintiffs argue in response (ECF No. 12) and in their cross-motion (ECF

4

No. 17) that regardless of whether RDC falls within the building and construction industry exception and regardless of any potential untimeliness of Plaintiffs' notification, RDC is barred from asserting these arguments because RDC did not timely initiate arbitration as required by 29 U.S.C. § 1401(a)(1). The Trustees argue that ERISA and the MPPAA set forth a distinct statutory scheme for challenging a pension plan's determination of an employer's withdrawal liability which requires an employer who disputes its withdrawal liability on any grounds to submit to the pension plan a request for review within 90 days of the pension plan's determination. If the employer disagrees with the pension plan's review or if the pension plan does not respond, the employer must initiate arbitration within a certain time. The Plaintiffs argue that if the employer fails either to timely request review or initiate arbitration, the employer waives all potential defenses to the pension plan's withdrawal liability determination, including whether the employer falls under the building and construction industry exception and whether the pension plan's notification was timely. The Plaintiffs also argue that there is no statute of limitations for assessing withdrawal liability and that the Plaintiffs are entitled to interest, liquidated damages, and attorney's fees and costs which bring the total to $777,147 when added to the base withdrawal liability.

**II.   DISCUSSION**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable

inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Court initially addresses ERISA and the MPPAA, particularly their provisions relating to mandatory arbitration. The Court next considers whether by not initiating arbitration RDC waived its defenses that: (1) RDC did not withdraw from the Pension Trust under the provisions of the building and construction industry exception to withdrawal liability under the MPPAA; and (2) the Plaintiffs failed to send their withdrawal liability determination to RDC "as soon as practicable." Finally, the Court will address: (1) the putative statute of limitations; and (2) the issues of acceleration, liquidated damages, and attorney's fees.

**A.     ERISA and the MPPAA**

"ERISA, the federal comprehensive private employee benefits statute, includes provisions designed 'to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans.'" *Resilient Floor Covering Pension Tr. Fund Bd. of Trs. v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1088 (9th Cir. 2015) (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720 (1984)). Intending to prevent a vicious cycle of withdrawal from multiemployer pension plans, ERISA and the MPPAA impose withdrawal liability on an employer that withdraws from a plan under certain circumstances. 29 U.S.C. §§ 1381–453; *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 196 (1997).

Generally, an employer incurs "complete" withdrawal liability when the employer "permanently ceases to have an obligation to contribute under the plan" or "permanently ceases all covered operations under the plan." 29 U.S.C. §§ 1381, 1383(a); *Operating Engineers' Pension Tr. Fund v. Clark's Welding & Mach.*, 688 F. Supp. 2d 902, 907 (N.D. Cal. 2010). However, the MPPAA sets forth specific

provisions defining complete withdrawal for employers in the building and construction industry based on Congressional "recogni[tion of] the transitory nature of contracts and employment in the building and construction industry." *Resilient Floor Covering Pension Tr. Fund Bd. of Trustees v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1089 (9th Cir. 2015). Such an employer only effects a complete withdrawal if the employer ceases to have an obligation to contribute under the plan and then the employer either continues to perform work or resumes work within five years of cessation in the same jurisdiction where contributions were previously required. 29 U.S.C. § 1383(b)(2). An employer is covered under this exception if "substantially all the employees" subject to the employer's contribution obligation "perform work in the building and construction industry" and the plan "primarily covers employees in the building and construction industry" or expressly provides that the exception applies. § 1383(b)(1).

After a withdrawal, the pension plan is required to notify the employer of the amount of withdrawal liability and the schedule for payments and demand payment according to the schedule "[a]s soon as practicable after an employer's complete or partial withdrawal[.]" 29 U.S.C. § 1399(b)(1). The employer may request a review from the pension plan within 90 days of its receipt of the withdrawal liability determination. 29 U.S.C. § 1399(b)(2). There is not a set time frame for the pension plan to respond to the employer's request for review.

The MPPAA broadly mandates resolution of disputes by arbitration. The MPPAA provides that "*[a]ny dispute* between an employer and the plan sponsor of a multiemployer plan concerning a determination made under [29 U.S.C. §§ 1381–99] shall be resolved through arbitration." 29 U.S.C. § 1401(a) (emphasis added). Either party may initiate the arbitration proceeding within 60 days of the earlier of: (1) the date the pension plan responds to the request for review; or (2) 120 days after the employer sends the request for review. *Id.* If no arbitration

proceeding is initiated, the amounts demanded by the pension plan "shall be due and owing on the schedule set forth by the plan sponsor," and "[t]he plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection." 29 U.S.C. § 1401(b)(1). There is an acceleration provision which provides that "[i]n the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(b)(5).

An employer that fails to initiate arbitration within the framework of the statute generally waives any objection to the withdrawal liability assessed by the plan. *See Teamsters Pension Tr. Fund—Bd. of Trs. of W. Conference v. Allyn Transp. Co.*, 832 F.2d 502, 504 (9th Cir. 1987) (holding that even questions of statutory interpretation fall within the MPPAA's arbitration mandate); *Clark's Welding & Mach.*, 688 F. Supp. at 907 (holding that by not initiating arbitration employer was barred from asserting defense of laches based on the requirement that a determination of withdrawal liability be made "as soon as practicable"); *Sheet Metal Workers of N. California Pension Tr. Fund v. Shillingsburg Ventures*, 2020 WL 13094012, at *7 (N.D. Cal. Dec. 18, 2020), *report and recommendation adopted*, 2021 WL 7448558 (N.D. Cal. Jan. 7, 2021); *cf. Pension Plan for Pension Tr. Fund for Operating Eng'rs v. Weldway Constr., Inc.*, 920 F. Supp. 2d 1034, 1044 (N.D. Cal. 2013) (holding that the question of whether the employer timely initiated arbitration is a question for the district court); *Clark's Welding & Mach.*, 688 F. Supp. at 909 (holding that the question of whether prior settlement agreement released the employer from withdrawal liability was a question for the district court and was not waived). The mandatory nature of arbitration under ERISA and the MPPAA "derives from Congress's dissatisfaction with collection procedures that resulted in lengthy, costly and complex litigation and the legislative choice to require arbitration, which this Court is bound to follow."

*Shillingsburg Ventures*, 2020 WL 13094012 at *7 (citing *Allyn Transp.*, 832 F.2d at 504) (internal quotations omitted). "While the assessment of withdrawal liability that results from a failure to arbitrate produces a harsh result, the result is largely 'a self-inflicted wound.'" *Clark's Welding & Mach.*, 688 F. Supp. 2d at 914 (quoting *I.L.G.W.U. Nat'l Ret. Fund v. Levy Bros. Frocks*, 846 F.2d 879, 887 (2d Cir. 1988)).

RDC raises two defenses to the demand for withdrawal liability: (1) that withdrawal was not triggered; and (2) that the notice of withdrawal liability was untimely. Plaintiffs maintain that both issues must be resolved by arbitration and are waived by RDC's failure to timely initiate arbitration under the MPPAA.

**B.    Determination of building and construction industry exception**

RDC argues that its withdrawal was not triggered because it is an employer in the building and construction industry and it meets the building and construction industry exception, 29 U.S.C. § 1383(b)(2), because it ceased operations in June of 2015 and did not continue to perform work or resume work within five years in Nevada. (ECF Nos. 7, 21.) However, RDC does not provide substantive argument as to why this contention was not waived by its failure to initiate arbitration. Instead, RDC only generally discusses the Congressional intent behind enacting the building and construction industry withdrawal provisions. (ECF No. 15 at 2–3; ECF No. 21 at 6–9.) RDC does not demonstrate how Congress's recognition of the building and construction industry's "project-by-project basis" overrides Congress's clear intent to require arbitration of "[a]ny dispute" concerning a determination made under 29 U.S.C. §§ 1381–99. (ECF No. 21 at 6; 29 U.S.C. § 1401(a).)

Furthermore, as the Plaintiffs point out, whether RDC actually fits the exception is a factual issue since it is based on whether "substantially all" of RDC's employees were building and construction workers. RDC did not provide any documentation to the Plaintiffs in order to assist their review, nor did RDC

9

initiate arbitration in order to demonstrate their eligibility for the exception to the arbitrator. Seeing no authority or argument as to why this determination does not fall within the scope of "any dispute" concerning a determination made under 29 U.S.C. §§ 1381–99, the Court must hold that RDC waived this defense. *See Allyn Transp.*, 832 F.2d at 506 (holding that the employer was required to arbitrate the question of whether the employer effected a withdrawal).

### C. Determination of whether withdrawal determination was made "as soon as practicable"

RDC also asserts the Plaintiffs demand for withdrawal liability payment was untimely. Specifically, RDC states that did not notify RDC of its determination of withdrawal liability until September 3, 2021, more than six years after RDC ceased its operations in June of 2015, and RDC argues that this delay constitutes a failure of the Plaintiffs' obligation under 29 U.S.C. § 1399(b) to notify the employer of the withdrawal liability determination "[a]s soon as practicable" after the employer's withdrawal. However, again RDC does not direct the Court to any authority stating that the "as soon as practicable" issue falls outside the scope of issues that must be arbitrated. Rather, as the Plaintiffs point out, the United States Supreme Court has suggested that the "as soon as practicable" issue is something that would fall in the scope of the mandatory arbitration. *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 205 (1997) ("[I]f an employer believes the trustees have failed to comply with their 'as soon as practicable' responsibility, the employer may assert that violation as a laches objection at an arbitration contesting the withdrawal liability assessment."). Other courts to consider the issue have held that the "as soon as practicable"/laches issue is subject to mandatory arbitration. *Clark's Welding*, 688 F. Supp. 2d at 909 (citing *Vaughn v. Sexton*, 975 F.2d 498, 501–02 (8th Cir.1992)). The Court holds that RDC waived this issue by failing to initiate arbitration.

10

RDC argues that the Plaintiffs should have initiated arbitration, pointing to the statutory language stating that "[e]ither party may initiate the arbitration proceeding[.]" 29 U.S.C. § 1401(a)(1). Although it is true that Plaintiffs could have initiated arbitration, RDC cites no authority for the proposition that the Plaintiffs' not doing so impacts the withdrawal liability demanded by Plaintiffs. Rather, the overall structure of the arbitration mandate under ERISA and the MPPAA places the onus on the employer to initiate arbitration if the employer seeks to contest the withdrawal liability determination made by the pension plan.

### D.   Statute of limitations

Separately from the "as soon as practicable" requirement, RDC argues that the Plaintiffs' delay in notifying RDC of its withdrawal liability determination means that the Plaintiffs' action is foreclosed by 29 U.S.C. § 1383(d)(4), which RDC describes as the "statue of limitations" of the MPPAA. (ECF No. 7 at 10–12.) However, as the Plaintiffs point out, paragraph (4) of subsection (d) of 29 U.S.C. § 1383 applies only to "employers engaged in the long and short haul trucking industry, the household goods moving industry, or the public warehousing industry." *See* 29 U.S.C. § 1383(d)(2).

Rather, as explained by the U.S. Supreme Court in *Bay Area Laundry*, the MPPAA sets forth a time limitation for a pension plan to sue to collect withdrawal liability which is the later of six years after the date on which the cause of action arose or three years after the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action, which can be extended to six years in the case of fraud or concealment. 29 U.S.C. § 1451(f); *Bay Area Laundry*, 552 U.S. at 197–98. In *Bay Area Laundry*, the Court held that a cause of action arises after two events transpire: (1) the pension plan calculates the withdrawal liability, sets a schedule of instalments, and demands payment from the employer; and (2) the employer defaults on an installment due under the schedule. *Bay Area Laundry*, 552 U.S. at 202. Default occurs upon "the failure

of an employer to make, when due, any [installment payment], if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure[.]" 29 U.S.C. § 1399(b)(5)(A). Because the Plaintiffs set forth a payment plan with the first installment payment due September 1, 2021, this action is timely. (ECF No. 12-1 Exh. 5.)

### E. Acceleration, liquidated damages, and attorney's fees

The Plaintiffs set forth an accounting of the total amount due, which consists of the withdrawal liability, interest, liquidated damages, and attorney's fees and costs and comes to a total of $777,147. (ECF No. 17 at 16.) RDC does not contest this accounting in its motion or in response to the Plaintiffs' motion. As the Plaintiffs explain, a failure of an employer to make a withdrawal liability payment is treated in the same manner as a delinquent contribution, 29 U.S.C. § 1451(b), for which the MPAA provides that the court shall award the pension plan: (1) the unpaid contributions; (2) interest on the unpaid contributions as determined by the rate in the plan; (3) liquidated damages equal to the greater of either the amount of the interest on the unpaid contributions or any liquidated damages set forth in the plan not to exceed 20% unless permitted by federal or state law; (4) reasonable attorney's fees and costs; and (5) other legal or equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2). The acceleration provision, 29 U.S.C. § 1399(b)(5), provides that upon default the pension plan can accelerate the remaining balance of the withdrawal liability plus accrued interest from the due date of the first untimely payment.

Here, the Plaintiffs provide the calculation of RDC's withdrawal liability which establishes that the withdrawal liability amount is $595,120. (ECF No. 17-1 Exh.'s 4, 5.) The Plaintiffs also proffer documentation which shows that the interest rate set forth under the Pension Trust is 14%. (ECF No. 17-1 Exh. 3 at 6.) Using this interest rate, the Plaintiffs calculate the outstanding interest on the first missed payment of $27,529, which accumulated for 89 days before

November 28, 2021, the date of the default and acceleration of the withdrawal liability, after which interest accrued on the entire $595,120 for 194 days until the Plaintiffs' motion for summary judgment was filed. These calculations resulted in an interest amount of $45,223.21. Regarding liquidated damages, the Plaintiffs proffer documentation that the Pension Trust initially set the liquidated damages amount at 10% of the unpaid contributions (ECF No. 17-1 Exh. 3 at 6), but then set the amount to 20% in a subsequent amendment (ECF No. 17-1 Exh. 10 at 2). Twenty percent of $595,120 is $119,024. Finally, the Plaintiffs proffer documentation relating to their attorney's fees and costs (ECF No. 17-1 Exh. 11) which total $17,780. The Court finds the Plaintiffs' calculations to be accurate and to have sound basis in law.

### III.   CONCLUSION

Based on the above and upon the relevant law, RDC's motion to dismiss, or alternatively, motion for judgment on pleadings, or alternatively, motion for summary judgment (ECF No. 7) is denied.

The Plaintiffs' motion for summary judgment (ECF No. 17) is granted.

The Clerk of Court is directed to administratively close this case.

DATED THIS 24th day of February 2023.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE